**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | |
| **HECTOR VARGAS SANTOS,** | **CASE NO. 21-CR-047 (RDM)** |
| Defendant. | |

## UNITED STATES' TRIAL BRIEF

The United States, by and through its attorney, respectfully submits this brief summarizing the government's evidence at trial and various legal issues likely to be brought before the Court.

## I.    THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANT'S ACTIONS

On January 6, 2021, thousands of people descended on the U.S. Capitol building and grounds when a joint session of Congress had convened to certify the votes of the Electoral College for the 2020 Presidential Election. Vice President Michael Pence, as the President of the Senate, was there to preside over the joint session and, later, the Senate proceedings. On that day, physical barriers surrounded the U.S. Capitol building and grounds.  At all relevant times, the U.S. Capitol building and its grounds—including the inaugural stage on the Lower West Terrace on the West Front—were closed to members of the public.

The defendant, Hector Vargas Santos, was among those thousands who illegally entered the U.S. Capitol building and grounds that day. At approximately 12:51 p.m., the defendant climbed over the restricted area perimeter fencing and ran across the grass field on the west side of the Capitol. By 12:57 p.m., the defendant was near a bike rack barrier blocking entry to the lower West Plaza of the Capitol building. Approximately one minute later, the defendant moved that barrier, which allowed himself and other rioters to overwhelm U.S. Capitol Police officers and move closer to the building. While his fellow rioters engaged in hand-to-hand violence with a

police line, the defendant climbed a wall near the southwest scaffolding and waved a yellow Gadsden flag. After police confronted the defendant on the wall, the defendant rejoined the crowd below, near the police line and the violent clash between rioters and police. Here, the defendant came close to the police line and various less-than-lethal munitions. The defendant then moved through the crowd, to the northwest lawn and went around the Capitol building to the East Front.

At approximately 3:15 p.m., the defendant was blocked from entering the East Rotunda doors by a U.S. Capitol Police officer. At approximately 3:20 p.m., the defendant held open one of those same doors as the crowd overpowered the U.S. Capitol Police officers in the entryway. The defendant then entered the U.S. Capitol building at approximately 3:21 p.m. and quickly moved through the crowd toward the police line guarding the entrance to the Grand Rotunda. By approximately 3:24 p.m., the defendant had made his way through the police line and into the Grand Rotunda, where he recorded a video of himself and posted it to social media. A few minutes later, the defendant and other rioters inside the Rotunda were escorted out of the U.S. Capitol building through the Memorial Doorway.

Based on his actions on January 6, 2021, the defendant is charged with violating Title 18, U.S.C. Section 1752(a)(1) (knowingly entering and remaining in any restricted building or grounds); Title 18, U.S.C. Section 1752(a)(2) (knowingly engaging in disorderly or disruptive conduct in any restricted building or grounds); Title 40, U.S.C. Section 5104(e)(2)(D) (willfully and knowingly engaging in disorderly or disruptive conduct on Capitol grounds or in any of the Capitol Buildings); and Title 40, U.S.C. Section 5104(e)(2)(G) (parading, demonstrating, or picketing in any of the Capitol Buildings).

## II.     THE GOVERNMENT'S PROOF

With this filing, the government aims to streamline the presentation of evidence in the trial and focus the legal issues before this Court. The government intends to call approximately seven to eight primary witnesses—a Lieutenant from the U.S. Capitol Police, an Assistant Special Agent in Charge from the U.S. Secret Service, an identification witness who knew the defendant and witnessed the defendant's actions on January 6, 2021 through social media, a Capitol Police officer guarding the West Plaza, a Capitol Police Officer posted at the East Rotunda doors, two Metropolitan Police Department Officers from in and around the Grand Rotunda, and FBI Task Force Officer John Mocello. The government also expects to present video and photographic evidence of the defendant's actions in Washington, D.C. on January 6, and the defendant's social media posts before, during, and after January 6. This presentation will prove the charged offenses beyond a reasonable doubt.

### A.  Elements of the Crimes Alleged

The Information charges four offenses in total: two offenses under 18 U.S.C. § 1752 and two offenses under 40 U.S.C. § 5104.  The elements of those offenses are as follows.

Count One of the Information charges the defendant with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). In order to find the defendant guilty of this offense, the evidence must prove each of the following elements beyond a reasonable doubt:

1.  First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

2.  Second, that the defendant did so knowingly.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant knowingly entered or remained in a restricted building or grounds, the jury may consider all of the evidence, including what the defendant did or said.[1]

Count Two of the Information charges the defendant with disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). In order to find the defendant guilty of this offense, the evidence must prove each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

2. Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

3. Third, that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

---

[1]    *See* Seventh Circuit Pattern Criminal Jury Instructions; *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005).

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances, or interferes with another person by jostling against or unnecessarily crowding that person.

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[2]

The terms "restricted building or grounds" and "knowingly" have the same meanings described in the instructions for Count One.

Count Three of the Information charges the defendant with violent entry or disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D). In order to find the defendant guilty of this offense, the evidence must prove each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings.

2. Second, that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

3. Third, that the defendant acted willfully and knowingly.

The term "United States Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.[3]

The term "disorderly or disruptive conduct" has the same meaning described in the instructions for Count Two defining "disorderly conduct" and "disruptive conduct."

---

[2]     Redbook 6.643.
[3]     40 U.S.C. § 5101

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.[4]

The term "knowingly" has the same meaning described in the instructions for Count One.

Count Four of the Information charges the defendant with parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). In order to find the defendant guilty of this offense, the evidence must prove each of the following elements beyond a reasonable doubt:

1. First, that the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

2. Second, that the defendant acted willfully and knowingly.

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[5]

The terms "United States Capitol Buildings," "knowingly," and "willfully" have the same meanings described in the instructions for Counts One and Three.

**B.  Compilation Exhibits About January 6, 2021 Events at the U.S. Capitol**

Although the defendant is only one participant in the attack on the U.S. Capitol, evidence of the broader context of the events of the day is both relevant to and probative of the alleged offenses.

---

[4]     *See United States v. Bryan*, 524 U.S. 184, 190 (1998).

[5]     *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

The government intends to introduce evidence through a U.S. Capitol Police Lieutenant familiar with the Capitol Police procedures leading up to January 6, 2021, including the security measures put in place. The Lieutenant is also familiar with the approximately 1600 cameras present at the U.S. Capitol building and grounds. From the videos created by those cameras on January 6, 2021, the government has developed a comprehensive exhibit covering the events of the day.

As the Certification proceeding at the Capitol began, a large crowd gathered outside the U.S. Capitol.   Officers with the United States Capitol Police and the Metropolitan Police Department attempted to keep the crowd away from the building, but the crowd broke through several barriers on the West Front just before 1:00 pm.  Another crowd gathered on the East Plaza of the building, encroaching on the area where the motorcade that brought Vice President Pence to the Capitol was located.  Shortly before 2:00 p.m., the crowd on the West Front broke into the scaffolding, which was set up to construct the inauguration stage.  At 2:13 p.m., individuals in the crowd forced entry into the U.S. Capitol building itself on the West side near the Senate.  In response to this intrusion, representatives, senators, and Vice President Pence evacuated their respective chambers around 2:20 p.m.  For the next two hours, rioters flooded the building and the grounds, while police attempted to clear them out. The police finally cleared the Lower West Terrace of the Capitol at approximately 5:10 p.m.

The government also expects to submit the official *Congressional Record* for both the Senate and the House of Representatives on January 6, 2021, to demonstrate that there was congressional activity that was disrupted by the defendant and other rioters on that day.

The government expects the defense to object to these compilation exhibits under Rules 401 and 403 of the Federal Rules of Evidence. Evidence about the official proceeding, and its disruption, as well of the actions of Capitol Police with respect to the rioters, is relevant to the

charges in two respects. First, for Count Two, the government must prove that the defendant engaged in "disorderly or disruptive conduct" in a restricted area "when . . . such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions."  18 U.S.C. § 1752(a)(2).  The compilation exhibits establish how and when the disruption occurred.  Second, for Counts One and Two, the government must prove the defendant knowingly engaged in certain conduct in a restricted area.[6]  The compilation establishes that element by showing law enforcement efforts, both before and during the breach of the restricted area, to keep unauthorized persons out of the restricted area.

### C.  The Defendant's Social Media

The defendant posted content relevant to his intent in the days leading up to January 6, 2021, during the commission of the offenses on that day, and after the siege of the Capitol. This evidence is admissible non-hearsay party opponent statements. Fed. R. Ev. 801(2).

1.  *Facebook*

The government's identification witness was acquainted with the defendant through a neighborhood watch group in their hometown, Jersey City, New Jersey. On January 6, 2021, the witness watched some of the defendant's actions through the defendant's personal Facebook page, as the defendant posted his illegal actions online through video and photographic posts. At trial, the government expects this witness's testimony and videos will provide a precise picture of the defendant's actions and intentions.

---

[6] A defendant may violate 18 U.S.C. § 1752(a)(2) by engaging in disruptive conduct (with the appropriate *mens rea*) while "within such proximity" to a restricted area.  The proof in this case will establish that the defendant was "in" the restricted area, not merely in close proximity to it.

The government expects to admit several pieces of evidence through this identification witness's testimony, including a neighborhood watch sign-in sheet and several Facebook posts that the witness observed on the defendant's personal Facebook page.

The sign-in sheet that the defendant and others completed at the neighborhood watch meeting includes relevant contact information including the defendant's email address and phone number which corresponds with the Facebook user's information provided by Facebook. The witness was present when the sign-in sheet was completed by the defendant and kept a copy as leader of the neighborhood watch group.

The witness can testify that after meeting through the neighborhood watch, the defendant and the witness connected over Facebook and sometimes communicated on that platform. The witness is familiar with the homepage of the defendant's Facebook and can testify that the below image is a fair and accurate representation of the Facebook page through which they communicated with the defendant.



On January 6, 2021, the identification witness observed two posts on the defendant's Facebook page. The first occurred at approximately 2:55 p.m. and was a picture of rioters climbing a wall outside of the Capitol building. The caption read "WE THE PEOPLE TOOK

OVER THE U.S. CAPITOL #HOLDTHELINE". The second, depicted below, occurred at approximately 3:26 p.m. in which the defendant posted a video depicting the inside of the Grand Rotunda, before he turned the camera on himself and spoke into the camera.



Based on their prior interactions with the defendant, the identification witness recognized this post to depict the defendant.

After the identification witness reported these posts to the FBI, the government sought a subpoena for the subscriber information for the account, which matched the information from the neighborhood watch sign-in sheet. The government then obtained a search warrant for the content from Facebook. The posts viewed by the identification witness were still posted on the defendant's Facebook page.

   *2. Instagram*

The government also sought a search warrant for the Instagram account with the handle "ThunderVargasOfficial." A subpoena to Facebook, Instagram's parent company, confirmed that this account also belonged to the defendant.

On January 4, 2021, the defendant sent a message and donation link to several Instagram handles in a private message. The message encouraged the recipients to donate money to help "true American patriots" to go to Washington D.C. on January 6, 2021 to "fight the good fight" and fight for our democracy." The message signed off with "Thx #MAGA2021" This is relevant to the defendant's desire to go to D.C. and support others to go there. References to fighting for democracy show a concern over the outcome of the 2020 election. MAGA is a well-known acronym for then-President Donald Trump's campaign slogan "Make America Great Again." This shows the defendant was likely dissatisfied with the election results and his purpose in entering the restricted Capitol building, at a minimum, was to parade and/or demonstrate therein.

Also on January 4, 2021, the defendant commented on a post from the Lauren Boebert for Congress Instagram, stating that a GoFundMe would be established for legal defense of "anyone who gets into legal issues for practicing their 2nd amendment right in DC." On the post he expressed doubt that a large group would be arrested and encouraged gun owners to bring firearms to Washington, D.C.

Another private message displayed a knowledge of Washington, D.C. geography. The defendant discusses a Black Lives Matter painting on Pennsylvania Avenue that he and others intended to paint over.

The defendant also mocked peaceful protest in another message from January 4, 2021. He stated that some of the people are "only going to DC to take pics and videos and say they're real patriots but wont [sic] do shit that involves taking real action cause they're 'pEaCeful' [sic]".

On January 5, 2021, the defendant messaged someone that he was driving from New Jersey to D.C. This is relevant to explain when the defendant left and how he travelled to D.C.

Also on January 5, 2021, the defendant stated that he did not want to "go to D.C. again for another peaceful protest." Again, this statement expressed that he did not intend to be peaceful or merely demonstrate his disappointment with the election.

Later on January 5, 2021, the defendant more overtly discussed the election and his intent for going to Washington D.C. He wrote "If they cheat the presidential election they're cheating the cities. Time to rise but the peaceful shit that aint taking is [sic] nowhere its over."

Early on January 6, 2021, the defendant posted a message on Instagram that stated in "2 hours we boutta [sic] go wait for our president to talk to us and await the results of this fake fraudulent election that could result in the beginning of the next American civil war and revolution."

On January 6, 2021 at approximately 10:05 p.m., the defendant posted the below photograph with the caption "We done talking I'm fed up we not here for everyone to like US, we're here to be effective and to make a plan and execute and that's exactly what we did today. . . . #uscapitol #stopthesteal #MAGA". The defendant includes several more hashtags demonstrating his support for various causes and politicians.



On January 7, 2021, the defendant said in a private message that he "managed to take 2 hills and force our way into the Capitol." The use of the word "force" suggests the defendant knew that he was not allowed to enter.

On January 8, 2021, the defendant stated "When trump said let's go to Capitol I was the first guy to bust down the capitol fence down and rushing to the capitol didn't see none of them. We got pepper sprayed, shot with paintballs and flashbangs." This statement proves the defendant's knowledge that he was entering a restricted area by the presence of the fence he described "busting down." It is also an admission to some of the defendant's disruptive conduct on the Capitol grounds.

3. *Twitter*

On January 4, 2021, the defendant posted a tweet, that was also sent through a private message on Instagram above, "As we're getting close to Jan 6th there are way more true American Patriots interested in coming to fight the good fight in Washington DC. With your donations we can help them get down there to fight for our democracy. Please donate n share. Thx #MAGA2021https://www.gofundme.com/f/28o21hgvuo?utm_medium=social&utm_source=instagram&utm_campaign=p_na+share-sheet."

**D.     The Defendant's Appearance on CCTV Footage, Body Worn Camera Footage and Video from Other Rioters**

In addition to video evidence obtained from the defendant's social media, the government will also present videos from U.S. Capitol Police closed circuit camera system, Metropolitan Police Department body worn camera videos, and videos from other rioters in and around the U.S. Capitol building on January 6, 2021.

1. *U.S. Capitol Police Closed Circuit Television (CCTV)*

The defendant first appeared on CCTV footage approaching the west front of the Capitol Building at around 1:00 p.m. From the overhead view, the defendant can be observed moving a bike rack barricade and running past U.S. Capitol Police officers onto the lower West Plaza. Shortly thereafter, CCTV depicted the defendant climbing a wall on the southwest side of the lower West Plaza to the upper West Terrace. Once on top of the wall, the defendant was handed a yellow Gadsden flag from another rioter and he waived it in the air. Police officers responded to the wall, and seemingly ordered the defendant from the wall. The defendant rejoined the crowd below and eventually reappeared on open-source video and other rioters cell phone footage in the crowd and on the northwest side of the building. At approximately 3:15 p.m., the defendant appeared on CCTV at the East Rotunda doors where he was confronted by a Capitol Police officer, who prevented the defendant from entering the building. The defendant remained in the area, and subsequently entered a few minutes later with a large crowd, that pushed past police into the East Rotunda doors. The defendant is on CCTV footage as he moved through the crowd towards the Metropolitan Police Department ("MPD") line that blocked the entrance to the Grand Rotunda, and subsequently in the Rotunda itself.

   2. *Body-Worn Camera*

The defendant appears on several MPD officer's body-worn camera recordings a few minutes after entering the building. The defendant appears with a group of rioters that pushed through the MPD line inside the Rotunda. On Officer Jeffrey Smith's body worn camera, the defendant is captured holding up his cell phone, consistent with recording or taking a picture. The body-worn camera footage here, corresponds with the video the defendant posted of himself on Facebook inside the Grand Rotunda. The defendant is recorded on several police officer's body

worn camera with a crowd that pushed into the Rotunda including Officers Jeremiah Johnson, Lee Lepe, Paul Weiss and Byron Jenkins.

3.  *Open Source and Other Rioters' Footage*

The defendant appears on several open-source videos posted on public websites as well as footage recovered from other rioters' cell phones and social media accounts. These videos help provide context to what is happening on the ground when compared with a sterile, overhead surveillance clip. This footage shows the defendant when he opened the gate on the West Plaza and ran across the West Plaza, as he climbed the wall and waved the yellow Gadsden flag and interacted with the police line. These videos also show the defendant's path around the building to the Northwest scaffolding, and ultimately, to the East Front of the building. Cell phone footage depicts the defendant by the East Rotunda doors for several minutes before entering with a burst of rioters.

In all of these videos, the defendant's distinctive clothing and hairstyle correspond with what he wore throughout the day on January 6, 2021. The recordings also capture the defendant in crowds around areas that can be easily identified as parts of the Capitol building and grounds. The crowd and surroundings are consistent with the recordings being from January 6, 2021. Some of the footage, particularly in the East Rotunda doors and West Front can be corroborated by official USCP CCTV recordings of the same events. Additionally, many recordings capture government witnesses in the same area as the defendant and will be authenticated through those witnesses.

**E.  Testimony of Officers in the Rotunda and at the East Rotunda Doors**

Officers from the U.S. Capitol Police were guarding the East Rotunda doors when the defendant came into that area at around 3:10 p.m. The defendant was first prevented from entering the building at those doors at around 3:15 p.m. and subsequently entered with a large crowd that

overwhelmed the officers at approximately 3:21 p.m. The officers at the door will testify that they did not let rioters in through that door, and over the course of several hours, a few large pushes of rioters made it past them and into the East Rotunda foyer area. Otherwise, the area was constantly full of rioters trying to enter and exit through the doors.

Officers in the Rotunda will testify regarding their deployment to the Capitol as MPD Officers to support U.S. Capitol Police. The officers will testify about their efforts to continually clear the Rotunda of rioters and keep rioters from entering the Rotunda for several hours. The officers will testify that the defendant, and the others he was with, were not supposed to be in the Rotunda and pushed their way in despite law enforcement efforts to keep them out.

### F.     Testimony Regarding the Former Vice President

The government intends to introduce testimony from an Assistant Special Agent in Charge with the U.S. Secret Service who was assigned to the detail of former Vice President Mike Pence on January 6, 2021 and can testify about his whereabouts on that day.

Vice President Pence was, in fact, within the restricted area throughout the Capitol breach. And even if the government offered no evidence as to the Vice President's exact location at the time of the defendant's offense, the public record makes clear that Vice President Pence was in the Senate Chamber in the early afternoon on January 6 and returned to the Senate Chamber for the proceedings in the evening on January 6, 2021.  This alone establishes that the Capitol Building and Grounds were a restricted area at the time of the charged offense because, at the very least, it was a location where the Vice President "will be temporarily visiting."

The government expects the defense to object to this testimony under Rules 401 and 403 of the Federal Rules of Evidence. Evidence about Secret Service protectees at the Capitol, is relevant to the charges in two respects. First, it explains to the jury why parts of the Capitol grounds

were off limits on January 6, 2021, that may otherwise be open to the public. Second, the Secret Service's role in protecting the Vice President is an official function, and by moving the Vice President to a secure location, not only was the Certification disrupted, but the Vice President's general protection was disrupted.

## III.    LEGAL ISSUES BASED ON ANTICIPATED DEFENSES

Based on the defendant's previous arguments and pre-trial filings, as well as the nature of the evidence in this case, the government anticipates that the defendant may pursue certain defenses at trial.  Legal issues presented by these anticipated defenses, none of which undermines the proof in this case, are previewed below.

### A.    The Defendant Need Only Intend to Enter the Restricted Area Knowing That He Did Not Have Lawful Authority to Do So, and the Government Need not Prove that he had Knowledge of the Vice President's Presence.

The "knowingly" element of 18 U.S.C. 1752 requires the government to prove that the defendant was aware that he entered and remained in a restricted area and that he knew he did so without lawful authority. The evidence at trial will make that showing. Open-source video depicts the defendant as he climbed over snow fencing bearing an "Area Closed" sign. In addition to the defendant's statements in social media posts, this will prove that the defendant knowingly entered a restricted area.

The defendant may argue that the government is also required to prove that the defendant knew that the Vice President was at the Capitol at the time of his entry or knew the Vice President would return to the Senate chamber following his departure from the grounds.  That argument is incorrect.  Section 1752 does not require the government to prove that the defendant knew why a "restricted building or grounds" was restricted.  The "knowingly" adverb in Section 1752(a) modifies the actus reus in each Count—entering or remaining without lawful authority in Count

17

One (§ 1752(a)(1)), engaging in disorderly or disruptive conduct in Count Two (§ 1752(a)(2))—but does not attach to 18 U.S.C. § 1752(c), which defines the term "restricted building or grounds" in one of three possible ways.  How to define a restricted area for purposes of 18 U.S.C. § 1752 has "nothing to do with the wrongfulness of the defendant's conduct," and thus is "not subject to the presumption in favor of scienter."  *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019); *see United States v. Bursey*, 416 F.3d 301, 309 (4th Cir. 2005).  It therefore follows that Section 1752 does not require the government to prove the defendant knew either that the restricted area on January 6 was restricted because of the Vice President's presence or where within the restricted area the Vice President was.

### B.  Defendant's Conduct was Disorderly and Disrupted Both Official Functions and the Congressional Business of January 6, 2021

The defendant participated in several acts of disorderly and disruptive conduct. On the West Front, the defendant's conduct was disorderly when he stood close to the police line while the officers were engaged in fighting with rioters. The defendant did not move until an officer physically placed hands on the defendant and pepper-spray was deployed in the area. The defendant also unreasonably jostled and crowded officers at the East Rotunda doors when he tried to enter at approximately 3:15 p.m. and was prevented from doing so by the officers. The defendant remained with a large crowd outside the doors until the crowd overwhelmed the officers at approximately 3:21 p.m. The defendant then quickly proceeded through the crowd to the MPD line guarding the Rotunda entrance. The defendant made his way through the dense line of officers wearing riot gear and into the Grand Rotunda. In order to do so, the defendant unreasonably crowded and jostled officers. The defendant's conduct was also disruptive, broadly to the Joint Session of Congress, and more narrowly to the individual officers performing their official functions of protecting the Capitol. The defendant disrupted officers by moving a bike rack

barricade on the West Front and running further into the restricted area on the West Plaza. Several rioters flowed into the West Plaza through the hole in the fencing opened by the defendant. The officers then engaged in hand-to-hand fighting on the Southwest Plaza. The defendant also disrupted officers by climbing a wall on the Southwest Plaza that lead to the Upper West Terrace. Once there, the defendant waived a large Gadsden Flag, encouraging the rioters below, and diverting officers to remove him from the wall. It was also disruptive for the defendant to hold the East Rotunda doors which assisted the crowd to push into the building. The defendant's ultimate presence in the Grand Rotunda was disruptive to the Joint Session as any members of the Senate, including Vice President Pence, could not travel through the Grand Rotunda to meet with the House of Representatives and continue the electoral college count while rioters were present.

IV.     CONCLUSION

On January 6, 2021, the Capitol grounds and building was a restricted area, for the safety and security of the Vice President of the United States. On that day, the defendant joined the mob that entered the restricted area and participated in several disorderly and disruptive acts therein. At trial, the evidence will prove that the defendant acted with knowledge and willfulness when taking those actions on January 6, 2021, and the government will prove his guilt beyond a reasonable doubt.

Dated: November 28, 2022

Respectfully Submitted,
MATTHEW M. GRAVES
United States Attorney

By:      /s/*Kimberly L. Paschall*
Kimberly L. Paschall
D.C. Bar No. 1015665
Kyle R. Mirabelli
N.Y. Bar No. 5663166
Assistant United States Attorneys
555 Fourth Street, N.W., Room 4237
Washington, DC 20530
Kimberly.paschall@usdoj.gov
Phone

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.

Dated: November 28, 2022

By: _____/s/*Kimberly L. Paschall*_____
Kimberly L. Paschall
D.C. Bar No. 1015665
Kyle R. Mirabelli
N.Y. Bar No. 5663166
Assistant United States Attorneys
555 Fourth Street, N.W., Room 4237
Washington, DC 20530
Kimberly.paschall@usdoj.gov
(202) 252-7760