UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                         Plaintiff,

              v.                                    Case No. 1:21-cr-00047-RDM

HECTOR VARGAS,

                         Defendant.

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

Defendant Hector Vargas, through counsel, respectfully submits this Supplemental Memorandum in Aid of Sentencing in response to the Court's March 20, 2023, Minute Order.

**1.  Applicable Guideline Provision**

The Sentencing Guidelines' Statutory Index identifies two Chapter Two Guideline provisions as applicable to violations of 18 U.S.C. §1752: §2A2.4 and §2B2.3.  As the Guidelines state, this occurs when a "particular statute … proscribes a variety of conduct that might constitute the subject of different offense guidelines," and requires the sentencing court determine which of the provisions is "most appropriate for the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. §1B1.2 cmt. 1.

Count 2 charged Mr. Vargas with violating 18 U.S.C. §1752(a)(2), which prohibits "[e]ngaging in disorderly or disruptive conduct with intent to disrupt government functions, and which in fact disrupts those functions."  The government argues that the Court should apply U.S.S.G. §2A2.4 to this count because the title of that provision, "Obstructing or Impeding Officers," "parallels Section 1752(a)(2)'s requirement that the defendant have '*in fact*' 'impede[d] or disrupte[d]' … Government business or official functions."  Government's

Supplemental Sentencing Memo (April 6, 2023) [ECF NO. 85] 9"Gov't Supp. Sent. Mem.") at 2 (original emphasis).

The government cites a number of cases in which the Probation Office applied §2A2.4 to convictions under 18 U.S.C. §1752(a)(2), and in which the court "appears" to have applied that provision. Gov't Supp. Sent. Mem. at 3-4. However, it does not appear that the defendant in any of these cases challenged the application of that provision. *See, e.g.,* [Defendant's] Sentencing Memorandum, *United States v. Simon,* No. 21-cr-346-BAH (D.D.C. 8/5/22) [ECF NO. 63] at 3 ("the parties stipulated to these guideline applications, and Mr. Simon does not dispute the offense level"); Plea Agreement, *United States v. Bromley,* No. 21-cr-250-PLF (D.D.C. Dec. 1, 2021) [ECF No. 37] at 3 (agreeing to application of U.S.S.G. 2A2.4(a)). It appears that the question whether §2A2.4 or §2B2.3 is the Guideline provision applicable to that statute has been contested, and decided by the Court, in only one January 6 case.[1] *See* Tr., *United States v. Brodnax,* No. 21-cr-350-PLF (D.D.C. July 12, 2022) [Exh. A hereto] at 91. In *Brodnax*, Judge Friedman held that although nearly every January 6 defendant convicted under §1752(a)(2) has agreed to the application of U.S.S.G. §2A2.4, "as a matter of law, that's wrong." *Id.* at 100.

Judge Friedman noted that §2A2.4 itself identifies six statutes to which it applies, which do not include §1752(a)(2), but include:

> "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidate[ing], or interfer[ing] with certain officers, 18 U.S.C. §111;
>
> assaulting a process server, 18 U.S.C. §1501;

---

[1] As the government notes, Gov't Supp. Sent. Mem. at 4, in *United States v. Sidorski,* No. 21-cr-48-ABJ (D.D.C. ), Judge Jackson disagreed with the government's argument that U.S.S.G. §2A2.4, rather than §2B2.3, applied to a conviction under 18 U.S.C. §1752(a)(2), but nevertheless applied §2A2.4 because the parties had agreed to it.

"obstruct[ing], resist[ing], or oppos[ing] an extradition agent of the United States in the execution of his duties, 18 U.S.C. §1502;

"fail[ing] to obey an order by an authorized Federal law enforcement officer to heave to that vessel," 18 U.S.C. §2237(a)(1);

forcibly resist[ing], oppos[ing], prevent[ing], imped[ing], intimidat[ing], or interfer[ing] with a boarding or other law enforcement action authorized by any Federal law or to resist a lawful arrest, 18 U.S.C. §2237(a)(2); and

"obstruct[ing], resist[ing], or interfer[ing] with a Federal law enforcement agent engaged in the performance of [certain] protective functions." 18 U.S.C. §3056(d).

Judge Friedman noted that each of these statutes prohibits "obstructing, impeding, or interfering with law enforcement officials performing official duties." *Id.* at 95 (citing *United States v. Montez,* 36 F.4th 824, 826 (8th Cir. 2022). By contrast, he wrote, §1752(a)(2) "does not assume that a person is the victim," but that "the government, the governmental function, is at issue." *Id.* at 99. He further held that §1752(a)(2) does not prohibit obstructing, impeding, or interfering with a person, and "not every instance of the disruption of the governmental function involves obstructing or impeding an officer." *Id.* at 96, 98. He noted that other January 6 defendants have been charged with "things that allege conduct towards an individual, assaults on police officers, throwing things at police officers, pushing people, throwing fire extinguishers or guardrails into police officers, destroying property." *Id.* at 97-98. However, those defendants have been charged for those acts under statutes other than 18 U.S.C §1752(a)(2), and Judge Friedman held that U.S.S.G. §2A2.4 is inapplicable where the defendant is not charged with or convicted of interfering with particular law enforcement officers. *Id.* at 98.

Judge Friedman went on to note that the specific offense characteristics described in §2A2.4 focus on "human beings, individuals as victims." *Id.* For example, §2A2.4 calls for an increase in offense level where "the offense involved physical contact," or where "the victim

sustained bodily injury."  U.S.S.G. §2A2.4(b)(1) & (b)(2).  This, he concluded, further supports the conclusion that §2A2.4 applies where the offense involves interference with individual law enforcement officials performing official duties.  *Id.; see also* U.S.S.G. §2A2.4 cmt.2 (identifying the "victim" of the offenses covered by §2A2.4 as "a governmental officer performing official duties").

The Guidelines direct that the determination of which Guideline provision is applicable in a particular case be made on the basis not of the language of the charging statute, but on the basis of "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant."  U.S.S.G. §1B1.3(a)(1)(A).  In *Brodnax,* Judge Friedman noted that the defendant's conviction under 18 U.S.C. §1752(a)(2):

> [D]id not directly involve obstructing, impeding, or interfering with law enforcement.  The information does not say that – law enforcement officer.  The information doesn't say that he did, and the statute under which he was charged doesn't require it."

*Id.* at 96.  In fact, Judge Friedman wrote, the defendant in *Brodnax* "made no physical contact with any police officers … didn't even yell, what we know of, at any officers."  *Id.* at 98.

Here, the Court must determine whether Mr. Vargas' conduct on January 6, 2021, more closely corresponds to that described in the statutes identified by U.S.S.G. §2A2.4 – *i.e.,* direct interference with a particular officer attempting to carry out their duties – or the conduct covered by U.S.S.G. §2B2.3 – *i.e.,* trespass.  U.S.S.G. §1B1.3(a)(1)(A).  Like the defendant in *Brodnax,*  Mr. Vargas made no physical contact with any officer.  Instead, at trial, the government argued that Mr. Vargas' mere presence in the Capitol building itself impeded the conduct of government functions.  Tr. (Dec. 9, 2022) at 81-82.  In fact, the government argued to the jury that Mr. Vargas disrupted government business "when [he] entered the building" – in other words, that the act of trespassing *itself* constituted a violation of 18 U.S.C.

4

§1752(a)(2). *Id.* at 92; *see also* Government's Opposition to Defendant's Renewed Motion for Judgement of Acquittal at 6 ("[t]he defendant *entering the building* with several other rioters also disrupted the certification of the 2020 Presidential election which is a 'process' undertaken by Congress" and which  "could not resume until after 8:00 p.m. on January 6, 2021, due to the *presence* of rioters") (emphasis added).  And the government argued to the jury that the government business Mr. Vargas allegedly impeded was not any officer in the performance of their duty, but a "session of Congress."[2]  *Id.* at 90-91, 94.

Thus, even if the title of §2A2.4 "parallels" the "impeded" language of 18 U.S.C. §1752(a)(2), an examination of Mr. Vargas' own acts – and the theory of liability the government argued to the jury – reveals that the offense of which he was convicted in Count 2 more closely resembles trespass than interference with an officer in the performance of their duties.  Therefore, Mr. Vargas' Base Offense Level should be calculated under U.S.S.G. §2B2.3, rather than §2A2.4.

## 2. U.S.S.G. §2B2.3(b)(1)(A) Enhancement

The Court is correct that because Mr. Vargas' offense occurred in a restricted building, U.S.S.G. §2B2.3(b)(1)(A) calls for an increase of 2 in his Base Offense Level, and his Total Offense Level, to 6.  Since Offense Level  6 and Offense Level 4 are both in Zone A of the Sentencing Table, this does not change the recommended sentencing range, which remains 0-6 months, and which still permits a sentence of probation.

---

[2] Although many individuals present at the Capitol on January 6, 2021, have been charged under 18 U.S.C. §231(a)(3) with forcibly obstruct[ing], imped[ing], or interfer[ing] with any … law enforcement officer" on that day, Mr. Vargas was not.

### 3.  U.S.S.G. §2A2.4(b)(1)(A) Enhancement

The government argues that Mr. Vargas' offense level should be increased by 3 under U.S.S.G. §2A2.4(b)(1) because his offense "involved physical contact."  Gov't Supp. Sent. Mem. at 7.  The government does not allege that there is any evidence that Mr. Vargas himself ever came into contact with any officer;[3] instead, it contends that the language of this Guideline provision "would accommodate the indirect use of force," and suggests that Mr. Vargas made such indirect contact with officers by virtue of his contact with other individuals in the crowd who made contact with others, resulting in a sort of "human chain," one end of which made contact with an officer.   Gov't Supp. Sent. Mem. at 8.  The government is mistaken, for several reasons.

*First*, to the extent §2A2.4(b)(1) could "accommodate" an interpretation that includes the indirect use of force, it is ambiguous, and the rule of lenity requires that it be read narrowly – *i.e.,* to *exclude* indirect contact.  *United States v. Burke*, 888 F.2d 862, 866 (D.C. Cir. 1989); *see also Bifulco v. United States*, 447 U.S. 381, 387 (1980)( "[The rule of lenity] applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose").

*Second,* this interpretation has no support in the language of the Guidelines, and the government identifies no rationale for this interpretation based on the Guidelines.  Nor does the government cite a single case applying §2A2.4(b)(1) in this fashion.

The government contends that, as in *United States v. Taliaferro,* 211 F.3d 412, 415-16 (7th Cir. 2000), "the meaning [of 'physical contact' in §2A2.4(b)(1)] can be derived by

---

[3] The Presentence Investigation Report's claim that evidence at trial showed Mr. Vargas "coming into contact with police officers," Final Presentence Investigation Report (March 15, 2023) [ECF NO. 81] at 7, is incorrect.

examining the law of battery," which penalizes not only direct contact, but the "indirect application of force . . . by some substance or agency placed in motion by the aggressor." Gov't Supp. Sent. Mem. at 8.  It notes that in *Taliaferro* and *United States v. Shelton,*  431 F. Supp. 2d 675, 675-77 (E.D. Tex. 2006), courts applied the physical contact enhancement where defendant did not make direct contact with officers, but threw human waste at them. But battery requires an intentional act by the defendant, as the government recognizes in noting that battery penalizes the "indirect application of force . . . by some substance or agency *placed in motion by the aggressor.*" Gov't Supp. Sent. Mem. at 8 (emphasis added).  The defendants in *Taliaferro*  and *Shelton* intentionally "set in motion" the material they threw at the officers in those cases.  In short, §2A2.4(b)(1) applies only where contact is initiated by the defendant.  *United States v. McKiever,* 982 F. Supp. 848, 849 (M.D. Fla. 1997).  Thus, for the enhancement to apply even under the government's "human chain" theory, it must show that Mr. Vargas "placed in motion" another individual, who then either came into physical contact with an officer, or "set in motion" a third individual who did.  The government offers no evidence that this occurred.

Finally, even if there were a basis to apply the provision in this manner, the evidence does not support its application here.  The government asserts that the evidence showed Mr. Vargas "forc[ing] his way to the front of the crowd and using his body weight and arms to press" against others who "pushed against the police lines." Gov't Supp. Sent. Mem. at 8.  But in fact, the evidence makes clear that Mr. Vargas was pushed into the Capitol building and borne along by the crowd until he entered the Rotunda.  For example, in Government Exhibit 415, Mr. Vargas can be seen between the building entry and Rotunda doors, in the middle of a densely packed crowd, with other persons clearly pushing him from the back. (time stamp 00:29-32).  In Exhibit 104, at 3:21:10, a large crowd can be seen shoving its way into the

building.  Mr. Vargas is not at the front of this crowd, but appears 5 seconds later, being pushed along in the middle of the crowd.  Several people can be seen with their hands on his back, pushing.  And in Exhibit 305, at 3:24:30 – an event which the government characterizes as "show[ing] Mr. Vargas pressing his back into another rioter, whom an officer is trying to control, demonstrating the force being used by the rioters" –Mr. Vargas comes into contact with that other individual because that individual is pushed into Mr. Vargas by an officer.

### 4.  U.S.S.G. §3C1.1

In its Sentencing Memorandum, the government conceded that there is no evidence to support the Probation Office's suggestion that Mr. Vargas' offense level should be increased pursuant to the "Obstruction and Impeding the Administration of Justice" adjustment   because he deleted social media accounts.   Government's Sentencing Memorandum (March 14, 2023) [ECF NO. 79] at 14.  However, the government argued there – and again argues here – that the enhancement should apply because, it claimed, Mr. Vargas gave "false and misleading testimony during trial."  *Id.* at 15.  In support of this argument, the government cites several pieces of Mr. Vargas' testimony that it claimed were false or misleading.  But these portions of his testimony do not support application of U.S.S.G. §3C1.1.

*First,* the government suggests that Mr. Vargas' testimony that he wore a vest over his jacket because of the cold was false because he wore the same vest during another protest in the summer of 2020.  Gov't Supp. Sent. Memo at 9.  The government offers no evidence that Mr. Vargas wore the vest for any other reason, and the afternoon of January 6, 2021, was cold, with the temperature ranging from 38-43 degrees Fahrenheit.  Washington DC Weather history, January 2021, wunderground.com, available at https://www.wunderground.com/history/monthly/us/dc/washington/KDCWASHI287/date/2021-1.  Even if Mr. Vargas also wore the vest on another occasion when it was *not* cold, there

is no basis on which to conclude that the temperature on January 6, 2021, did not influence his decision to wear the vest.

*Second,* the government alleges that the Defendant "attempted to give the jury the impression that he was a peaceful community activist, who attended a lot of political rallies." *Id.* at 10.  This testimony was accurate – the Defendant did attend multiple rallies, and there is no evidence that he was anything other than peaceful at them.  Even if, as the government suggests, the Defendant did not "really" support these causes in his mind, *see  id.* at 12 (Defendant "expressed his disdain" for "Black Lives Matter," and "hatched a plan to paint over" a Black Lives Matter mural), the government offers nothing to show that the testimony itself – that Defendant attended the rallies and was peaceful – was inaccurate.

*Third,* the government mischaracterizes the record in arguing that Mr. Vargas was "evasive when he testified that he was not heading anywhere in particular *after* the speech at the Ellipse but *happened* to travel in the direction of the Capitol." *Id.* at 10 (emphasis added).  Notably, the government does not quote any specific testimony by Mr. Vargas, because Mr. Vargas simply did not say what the government claims he did.  In the cited testimony, Mr. Vargas stated that he "was walking towards the Washington Monument" *during the speech,* while then-President Trump was speaking, but that he headed toward the Capitol "as soon as [he] heard" Mr. Trump direct the crowd there.  Tr. (Dec. 9, 2022) at 185.

*Fourth*, the government suggests that Mr. Vargas' testimony  that after a police officer stopped him, he "tried to avoid" entering the building was untruthful because he did not follow others who "stream[ed] out of the Capitol and mov[ed] away from the East Rotunda doors." Gov't Supp. Sent. Memo at 10.  But even if Mr. Vargas could have joined the group walking away from the Capitol, the fact that he did not is perfectly consistent with a desire to remain where he was – outside the door – and avoid entering.

*Fifth,* the government claims that Defendant's testimony that he admired the Capitol and its architecture was "disingenuous" because he later referred to the Capitol as a "motherfucker" that he "took over." *Id.* The Guidelines make clear that for the obstruction enhancement to apply to a defendant's testimony, that testimony must be not only false, but also material. U.S.S.G. § 3C1.1 App. Note. 4(b) (enhancement applies where defendant commits perjury, which requires proof that false testimony was material, 18 U.S.C. § 1621(1)); *see also United States v. White*, 582 F.3d 787, 796 (7th Cir. 2009); United States v. Juarez Duarte, 513 F.3d 204, 209 (5th Cir. 2008); *United States v. Sitting Bear*, 436 F.3d 929, 934 (8th Cir. 2006). Whether Mr. Vargas really did admire the Capitol is utterly irrelevant here.

Moreover, even if Mr. Vargas' subjective state of mind toward the Capitol building were material, the government offers no evidence to show that his testimony was inconsistent with his recorded statements. Whether or not Defendant actually "took over" the Capitol, the expression of a desire to "take over" a building is not in any way inconsistent with admiration for the building, and the term "motherfucker" "can be used as a compliment just as easily as it can be used as an insult," Urban Dictionary Definition of "motherfucker," available at https://www.urbandictionary.com/define.php?term=mother%20fucker.

*Sixth,* although the government concedes that the video footage shows the Defendant "briefly holding on to the door," it claims that he "used his hands and forearms to maneuver around, and press open, the East Rotunda door," in order to "maneuver[] his body into the entryway." Gov't Supp. Sent. Mem. at 10. But the video speaks for itself. Defendant did not "press open" the door – which had been opened before Defendant arrived at it, and remained so. Moreover, rather than "press[ing] open" the door, the video clearly shows the Defendant being turned so that his back faced the entryway before he was pushed in. As the government argued, given Mr. Vargas' size, "if he was holding onto that door" to avoid entering, "that door

... would have started moving a little bit." Tr. (Dec. 9, 2022) at 85. The video clearly shows the door moving, *toward* Mr. Vargas, who is not holding it open, but gripping it in an effort to remain outside the building.

*Seventh,* the government suggests that Mr. Vargas' testimony that he was pushed by the crowd was false. Gov't Supp. Sent. Memo at 11. There can be little question that there was a great deal of pushing in the crowd in the Capitol on January 6, 2021, *see, e.g.,* Tr. (Dec. 8, 2022) at 10, and as discussed above, the video evidence clearly shows Mr. Vargas being pushed by the crowd. *See* §1*, supra.*

*Eighth,* the government asserts that Mr. Vargas' testimony that he was affected by pepper spray was "disingenuous" because he "did not appear to be coughing" and "appear[ed][ rather calm." *Id.* But in Exhibit 305, at 3:25:08, Mr. Vargas can be seen pulling a cloth over his mouth and nose and stating that he "can't breathe." *See also* Tr. (Dec. 9, 2022) at 10 (testimony of Officer Lepe), 86 (government acknowledging, in closing argument, that Mr. Vargas told officers, I can't breathe"). More importantly, Mr. Vargas did not testify that he was "under the effects of pepper spray;" he merely stated, "I guess there was a strong sense of OC spray, pepper spray." Tr. (Dec. 9, 2022) at 22.

*Finally,* the government argues that the Defendant's testimony that he asked police the way out of the Rotunda is "not supported by any evidence." Gov't Supp. Sent. Mem. at 10. But even if there is no affirmative evidence that Mr. Vargas did ask for directions, the government does not purport to have recorded every word he spoke while in the Capitol, and points to no evidence that he did not ask police how to exit the building.

## 5. Grouping

The government is correct in stating that Counts 1 & 2 are "closely related counts: and should be grouped together under U.S.S.G. §3D1.2. The Probation Office's contrary

conclusion is incorrect.   *See* Defendant's Objections to Draft Presentence Investigation Report (March 3, 2023) [ECF No. 78] at 5.

Dated: April 13, 2023                              Respectfully submitted,


                                                    /s/ Paul F. Enzinna
                                                   D.C. Bar No. 421819
                                                   Ellerman Enzinna Levy PLLC
                                                   1050 30th Street, NW
                                                   Washington, DC 20007
                                                   202.753.5553
                                                   penzinna@eellaw.com


                                                   Nandan Kenkeremath
                                                   D.C. Bar 384732
                                                   USDC DC 384732
                                                   2707 Fairview Court
                                                   Alexandria, Virginia 22311
                                                   703-407-9407

                                                   *Counsel for Defendant Hector Vargas*


## CERTIFICATE OF SERVICE

I certify that on April 13, 2023, a copy of the foregoing Defendant's Supplemental Memorandum in Aid of Sentencing was filed using the CM/ECF system, which will then send notification of such filing to all counsel of record.

Dated:  April 13, 2023                             Respectfully submitted,

                                                    /s/ Paul F. Enzinna
                                                   Ellerman Enzinna Levy PLLC
                                                   1050 30th Street, NW
                                                   Washington, DC 20007
                                                   202.753.5553
                                                   penzinna@eellaw.com

                                                   *Counsel for Defendant Hector Vargas*