UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 21-cr-047 (RDM) |
| v. | : | |
| | : | |
| HECTOR VARGAS SANTOS, | : | |
| | : | |
| Defendant | : | |

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION FOR REIMBURSEMENT OF FEES AND RESTITUTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, responds to Hector Vargas Santos's (hereinafter "Vargas Santos" or "the defendant") motion to return the $70 special assessment, $500 in restitution paid for disbursement to the Architect of the Capitol, and $1456.19 paid toward a $2500 fine. *See* ECF No. 105.[1]

On December 12, 2022, a jury found Hector Vargas Santos guilty of four misdemeanor offenses following a trial. ECF No. 64. As part of its sentence, the Court ordered Vargas Santos to pay a $70 special assessment, $500 in restitution to the Clerk of the Court for disbursement to the Architect of the Capitol, and $2500 as a fine. *See* Judgment and Commitment Order, ECF No. 88, at 6. Vargas Santos timely appealed his conviction. ECF No. 91. While the case was on appeal, President Trump pardoned Vargas Santos, among others. *See* Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025). Pursuant to the President's executive order directing the Attorney General to pursue dismissal with prejudice of all pending cases against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021, *id.*, the government has moved the D.C. Circuit to vacate Vargas Santos's convictions and to remand the

---

[1] The defendant also seeks return of his personal property. ECF No. 105. It is in the process of being returned.

case to this Court for dismissal with prejudice under Federal Rule of Criminal Procedure 48(a). On February 4, 2025, the D.C. Circuit vacated this Court's judgment and remanded with instructions to dismiss the case as moot. ECF No. 104. This Court dismissed the case as moot on February 4. *See* 2/4/25 Minute Order.

Vargas Santos has now moved for an order requiring the Clerk of the Court to refund the special assessment, restitution, and fine that he paid. ECF No. 105. The government agrees that Vargas Santos is entitled to the return of those funds. Generally, a pardon "does not make amends for the past. It affords no relief for what has been suffered by the offender in his person by imprisonment, forced labor, or otherwise; it does not give compensation for what has been done or suffered, nor does it impose upon the government any obligation to give it." *Knote v. United States*, 95 U.S. 149, 153-54 (1877). As a result, a pardon does not "affect any rights which have vested in others directly by the execution of the judgment for the offence, or which have been acquired by others whilst that judgment was in force." *Id.* at 154. When that occurs, "[t]he rights of the parties have become vested, and are as complete as if they were acquired in any other legal way. So, also, if the proceeds have been paid into the treasury, the right to them has so far become vested in the United States that they can only be secured to the former owner of the property through an act of Congress." *Id.*; *see also Ex parte Garland*, 71 U.S. 333, 381 (1867) ("There is only this limitation to its operation: it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment.").

Thus, for example, in *Fordham v. Georgia Department of Administrative Services*, No. 23-11214, 2023 WL 5747709 (11th Cir. Sept. 6, 2023), the Eleventh Circuit rejected a defendant's request for "reimbursement of the restitution payments he made before his pardon[.]" *Id.* at *1. The district court in that case had "properly concluded that Fordham's pardon discharged his

obligation to make *future* restitution payments." *Id.* at *2. But as to the restitution payments that the defendant had already made, "[t]he district court transferred all restitution monies to the victims, so the property rights to those funds have fully vested in the Department and Great American. . . . In short, the money Fordham seeks is long gone. Allowing him to claw back past restitution payments under guise of a presidential pardon would impair the Department and Great American's accrued property rights in that money, an outcome plainly proscribed by the Supreme Court." *Id.*; *see also Boultbee v. United States*, No. 23-1884, 2024 WL 3220261, at *3 (Fed. Cl. June 27, 2024) (dismissing, for lack of subject matter jurisdiction, Tucker Act claim brought by pardoned plaintiff who sought a refund of all financial penalties collected; explaining that the "pardon power is not money mandating when the money is paid pursuant to a criminal conviction has vested in a third party").

Here, however, Vargas Santos was not just pardoned. Instead, while his case was on appeal, the government moved to vacate his convictions, which the D.C. Circuit granted, and this Court subsequently dismissed the case as moot. In this unusual situation, the Supreme Court's decision in *Nelson v. Colorado*, 581 U.S. 128 (2017), controls. There, the Court addressed the question: "When a criminal conviction is invalidated by a reviewing court and no retrial will occur, is the State obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction?" *Id.* at 130. The Court found that it was. *Id.* The Court held that, "[t]o comport with due process, a State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." *Id.* at 139; *see also Boultbee v. United States,* No. 23-1884, 2024 WL 3220261, at *4 (Fed. Cl. June 27, 2024) (*"Nelson* involved individuals whose convictions were invalidated on appellate review, not pardons").

3

Relying on *Nelson*, courts of appeals have held that, when a defendant dies during the pendency of the appeal, his estate is entitled to a return of fines, fees, and restitution. *See, e.g.*, *United States v. Libous*, 858 F.3d 64, 69 (2d Cir. 2017) ("If Libous's conviction is to be vacated and his indictment dismissed, as our precedents require, then his estate is entitled to the return of the fine.").

Here, Vargas Santos's conviction was "invalidated" when the D.C. Circuit vacated it, and thus "there is no longer any basis justifying the government's retaining funds exacted only as a result of that conviction." *Ajrawat*, 738 F. App'x at 139. The government thus agrees that, so long as the Clerk of Court confirms that Vargas Santos in fact made the special assessment, restitution payments and fine he seeks to have returned, Vargas Santos is entitled to reimbursement of those payments.[2]

                              Respectfully submitted,

                              EDWARD R. MARTIN JR.
                              United States Attorney

By:   */s/ Jennifer Blackwell*
       JENNIFER BLACKWELL
       Assistant United States Attorney
       D.C. Bar No. 481097
       601 D Street, N.W.
       Washington, D.C. 20530
       (202) 252-7068

---

[2] Because the Architect of the Capitol is a governmental entity, the government understands *Nelson* to entitle Vargas Santos to a refund of that restitution payment. The government does not believe that *Nelson* would require that result had the restitution payment been disbursed to and vested in a third-party victim. *See Osborn v. United States*, 91 U.S. 474, 477 (1875) ("The government can only release what it holds."); *Knote*, 95 U.S. at 154; *Fordham*, 2023 WL 5747709, at * 2 ("Allowing [the defendant] to claw back past restitution payments under guise of a presidential pardon would impair the Department and Great American's accrued property rights in that money, an outcome plainly proscribed by the Supreme Court."); *United States v. Reynolds*, 98 F.4th 62, 72 (1st Cir. 2024) (following *Nelson*, but declining to decide "whether the different considerations that might arise where forfeited property had been distributed to victims before a defendant's death would call for a different result").